# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| PRIMERICA LIFE INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | NO. 3:07-CV-0264-O |
| CLARENCE L. BACCUS, JR., ROSA BACCUS, TALISHA WINSTON, LASHAUNNA BACCUS, MYRA BACCUS, INDIVIDUALLY AND AS NEXT FRIEND AND GUARDIAN OF K. BACCUS, K. BACCUS, AND K. BACCUS, AND THE UNKNOWN HEIRS OF KEVIN E. BACCUS, DECEASED, | § § § § § § § § § § § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pursuant to the pretrial management order of the district court filed on August 8, 2008, came on to be considered Plaintiff Primerica Life Insurance Company's motion for summary judgment. Having reviewed the pleadings filed in this case and the briefs and appendices submitted by the parties, the Magistrate Judge finds and recommends as follows:

*Background and Procedural History:*

This action involves the proceeds from a life insurance policy issued by Plaintiff Primerica Life Insurance Company ("Primerica" or "Plaintiff") to Kevin E. Baccus ("Kevin"), now deceased. Effective August 28, 2001, Primerica issued life insurance policy number 0432483176 to Kevin E. Baccus ("the Policy"), which provided coverage in the amount of $200,000 ("the Policy Proceeds"). Appendix in Support of Plaintiff Primerica Life Insurance

Company's Brief in Support of Its Motion for Summary Judgment (hereinafter "App."), p. 9. Kevin originally designated his wife, Myra Baccus, as the primary beneficiary and his mother, Rosa Baccus, as the contingent beneficiary. App., p. 46. On or about June 27, 2006, Kevin submitted a "multipurpose change form" changing the primary beneficiary under the Policy to his brother, Clarence Baccus ("Clarence"). App., pp. 56-58. He did not designate a new contingent beneficiary. Approximately one week later, on July 3, 2006, Kevin was found dead in Oklahoma. App., p. 62. According to his death certificate, Kevin died of gunshot wounds to the head and abdomen and was "shot by another." *Id.*

On August 10, 2006, Clarence Baccus filed a claim under the Policy. App., pp. 67-68. Also on that date, Myra Baccus (Kevin's wife) called Primerica to inquire as to why she was not the beneficiary on the Policy. App., p. 70. Call notes maintained by Primerica document that on August 16, 2006, a Primerica employee called the McIntosh, Oklahoma Sheriff's Office and a Sheriff's Office employee stated that Kevin's death was still under investigation and that Clarence could not be ruled out as a suspect. App., p. 72. On August 18, 2006, a Primerica employee again confirmed with the Sheriff's Office that Clarence could not be ruled out as a suspect. App., p. 73. On August 31, 2006, a Primerica employee reported that a Sheriff's Office employee stated "to hold off on paying the [beneficiary] because the [beneficiary] is giving conflicting information." App., p. 74. On September 18, 2006, a Primerica employee entered call notes indicating that the Sheriff's Office did not want Primerica to pay the claim and that Clarence had not been released as a suspect. App., p. 75. In February 2007, shortly before filing this interpleader action, Primerica confirmed that the investigation into Kevin's death remained open and ongoing and that Clarence remained a suspect. App., p. 3, ¶ 12.

2

On February 8, 2007, Primerica filed a complaint for interpleader against Clarence, Rosa Baccus, Myra Baccus, individually and as next friend and guardian of minor children K. Baccus, K. Baccus, and K. Baccus, Talisha Winston, Lashaunna Baccus and the Unknown Heirs of Kevin E. Baccus. In its complaint, Primerica alleged that Clarence was a suspect in the death of Kevin and, therefore, may be disqualified from receiving the Policy Proceeds under Texas law (Texas Insurance Code § 1103.151), which provides that a designated beneficiary under a life insurance policy is disqualified from receiving the policy proceeds if the beneficiary "willfully" caused the death of the insured. Primerica further alleged that in the event of his disqualification, one or more of the other defendants would be entitled to the Policy Proceeds and that Primerica has reasonable doubt as to who, among the defendants, is entitled to the proceeds. Seeking to avoid multiple liability, it asked to be allowed to pay the Policy Proceeds into the registry of the court, that it be discharged from further liability to the defendants, and that the defendants be ordered to interplead and settle their rights and claims among themselves.

Contemporaneously with filing its complaint, Primerica filed a motion to deposit interpled funds into an interest-bearing account, which the district court granted on May 14, 2007. In granting the motion, the district court found that "Primerica's interpleader action is not frivolous or in bad faith, but is in fact the proper way to resolve who is entitled to the Proceeds." On May 24, 2007, Primerica deposited the Policy Proceeds into the registry of the court. On August 21, 2007, Primerica filed the instant motion for summary judgment, asking that the court dismiss it from this case.

As of September 27, 2007, none of the defendants had filed a timely response to Primerica's motion and, therefore, the district court ordered the defendants to file a response

within ten days or the court would determine the motion without a response. On October 15, 2007, defendant Clarence filed a response, claiming that he had not been served with Primerica's motion, but he did not respond to the substance of the motion. His response was unfiled by the court due to his failure to serve the other parties but was ultimately accepted for filing on November 1, 2007, after he effected service. None of the other defendants filed a response. On October 26, 2007, Primerica filed its reply brief. On November 6, 2007, presumably in response to Clarence's allegation regarding service, the district court directed Primerica to serve its summary judgment motion on Clarence at the address specified in his response and provided him twenty days from service to respond to Primerica's motion. On November 13, 2007, Clarence filed "objections" to Primerica's reply brief.

On December 10, 2007, Clarence filed an "Acknowledgment of Service" in which he acknowledged that he received service of Primerica's motion for summary judgment and supporting documents on November 10, 2007. On February 6, 2008, Clarence filed "Beneficiary's Objections to Primerica's Motion for Summary Judgment Part-One" to which Primerica filed a reply on February 21, 2008. On May 8, 2007, Clarence filed "Beneficiary's Correction to Primerica Erroneous Procedural History and Declaration of Rosa Baccus" to which Primerica responded on May 28, 2008.

*Summary Judgment Standard*:

To prevail on a motion for summary judgment, the moving party has the initial burden of showing there is no genuine issue of any material fact and judgment should be entered as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505 (1986). The materiality of facts is determined by substantive law. *Anderson*, 477 U.S. at 248. An issue

4

is "material" if it involves a fact that may affect the outcome of the suit under governing law. *See Burgos v. Southwestern Bell Telephone Co.*, 20 F.3d 633, 635 (5th Cir. 1994). If the moving party presents evidence tending to show the absence of any genuine issue of fact, the opposing party must then identify specific evidence in the record which establishes the existence of one or more issues of fact, i.e. a non-movant may not merely rely on his or her pleadings. *See Anderson*, 477 U.S. at 256-57; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87, 106 S. Ct. 1348 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). In addition, neither conclusory allegations nor hearsay statements are competent evidence sufficient to defeat a motion for summary judgment. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825, 113 S. Ct. 82 (1992). In analyzing the competent evidence proffered by the parties, the facts and the inferences to be drawn are viewed in the light most favorable to the non-movants. *Herrera v. Millsap*, 862 F.2d 1157, 1159 (5th Cir. 1989). Because Primerica bears the burden of proving the propriety of its interpleader claim, to obtain summary judgment it must establish all of the essential elements of its claim.

*Findings and Recommendation*:

The interpleader statute, 28 U.S.C. § 1335, grants district courts with the jurisdiction to hear interpleader actions "filed by any person, firm, or corporation, association, or society having in its possession money or property of the value of $500 or more . . . and involving "[t]wo or more adverse claimants, of diverse citizenship . . .[who] are claiming or may claim to be entitled to such money or property . . . ." 28 U.S.C. § 1335 (2006). "The procedural device of interpleader . . . allows a stakeholder effectively to avoid a dispute with the claimants while the court determines the proper allocation of the disputed fund." *Tittle v. Enron Corp.*, 463 F.3d

5

410, 423 (5th Cir. 2006). An interpleader action generally has two stages. *Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999), *cert. denied*, 531 U.S. 924, 121 S. Ct. 298 (2000). First, the court determines whether the requirements for an interpleader action have been met by deciding if there is a single fund at issue and whether there are adverse claimants to that fund; and second, if the district court concludes that the interpleader action has been properly brought, the court then determines the respective rights of the claimants. *Id*; *see also* 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1714 (3d ed. 2001). "[T]he burden is on the party seeking interpleader to demonstrate that [it] is entitled to it." *Dunbar v. U.S.*, 502 F.2d 506, 511 (5th Cir. 1974). In this case, Primerica, the stakeholder, moves for summary judgment with respect to the first stage and asks the court to dismiss it from this action.

It is undisputed here that there is a single fund, the Policy Proceeds. With respect to the requirement that there be "adverse claims" to the Policy Proceeds, even the mere "threat of multiple vexation by future litigation provides sufficient basis for interpleader . . . ." *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 696 F.2d 359, 364 (5th Cir. 1983). Clarence submitted a claim for the Policy Proceeds. However, Clarence may be disqualified from receiving the Policy Proceeds pursuant to Texas Insurance Code section 1103.151, which provides that "[a] beneficiary of a life insurance policy . . . forfeits the beneficiary's interest in the policy . . . if the beneficiary is a principal or an accomplice in willfully bringing about the death of the insured." Tex. Ins. Code. § 1103.151. As detailed above, Primerica has received information from

6

authorities in Oklahoma that Clarence is a suspect in Kevin's death.[1]  Under Texas law, if Clarence is disqualified, the Policy Proceeds are paid to the contingent beneficiary.  Tex. Ins. Code § 1103.152(a).  However, Kevin did not name a contingent beneficiary on the Policy when he changed the primary beneficiary to Clarence.  Where, as here, no contingent beneficiary is designated, the proceeds are paid to the insured's "nearest relative."  Tex. Ins. Code § 1103.152(c).  The term "nearest relative" is not defined in the statute but has been defined by the courts as "a person connected with another by blood or affinity; a person who is kin with another."  *Clifton v. Anthony*, 401 F.Supp.2d 686, 689 (E.D. Tex. 2005) (citing Black's Law Dictionary 1314 (8th ed. 2004)).

After it received notice that Clarence was a suspect in Kevin's death and to avoid the prospect of multiple claims from the defendants -- Kevin's relatives -- who may be entitled to the proceeds should Clarence be disqualified – Primerica filed the present action and deposited the Policy Proceeds into the registry of the court.  Its liability under the policy would not be discharged by payment to Clarence in light of its knowledge of the potential claims of Kevin's other relatives.  *See* Tex. Ins. Code § 1103.102 (payment of policy proceeds does not relieve insurer of liability if such payment is made with notice of any potential adverse claim).  Further, had Primerica not filed its interpleader action and instead waited for the Oklahoma authorities to finally determine whether Clarence was responsible for Kevin's death, it would potentially face liability for its delay in interpleading the funds or delay in notifying Kevin's relatives of their

---

[1]While Clarence and Myra Baccus have filed documents with the court in which they dispute Clarence's status as a suspect, they offer no evidence indicating that he was not considered a suspect or that he has been exonerated by Oklahoma law enforcement authorities as a suspect in Kevin's death.

potential claims to the Policy Proceeds. *See, e.g., Metropolitan Life Ins. Co. v. Hamm*, 2003 WL 22518183, at * 3 (E.D. Pa. Oct. 10. 2003) (holding insurer liable for delay in informing contingent beneficiaries of potential claim to policy proceeds, despite the fact that insurer was awaiting determination by law enforcement as to whether beneficiary caused death of insured). There is no evidence that Primerica filed this interpleader action in bad faith or that the filing of this case was unreasonably delayed. In addition, although Myra and Rosa Baccus have purportedly denied any claim to the Policy Proceeds (*see* docket nos. 22, 63), Kevin's adult children Talisha Winston and LaShaunna Baccus notified the court that they do not disclaim their interest in the Policy Proceeds. *See* docket no. 18.[2] In any event, should Clarence be disqualified, one of the other defendants would necessarily be entitled to the Policy Proceeds. In this situation, interpleader is proper to determine if the beneficiary, Clarence, is entitled to the Policy Proceeds and, if not, the proper claimants to the proceeds.[3] "The legislative purpose of an

---

[2]The answers filed by attorneys of record for Talisha Winston and LaShaunna Baccus have been called into question by Clarence. He suggests that the attorneys who filed answers for Winston and Baccus, who have since filed a motion to withdraw, did not have the authority to file answers on their behalf. Neither woman has filed an affidavit or other document with the court addressing the issue and, therefore, their position with respect to the Policy Proceeds is quite ambiguous. However, their positions, along with the rights of all defendants to the Policy Proceeds, can be determined by the court in the second stage of this interpleader action.

[3]In granting Primerica's motion to deposit the Policy Proceeds into the court registry, the district court also concluded that interpleader is the proper method for determining who is entitled to the Policy Proceeds in this case:

> Primerica asserts that it was put on notice by the McIntosh Sheriff's Department that the designated beneficiary of the Policy, Clarence Baccus, is a suspect in the murder of the Deceased, Kevin Baccus. Thus, Clarence Baccus may potentially be prohibited from receiving the Proceeds pursuant to Tex. Ins. Code § 1103.151. Additionally, without a clear definition of who the Deceased's "nearest relative" would be if Clarence Baccus is, in

8

interpleader action is to remedy the problems posed by multiple claimants to a single fund, and to protect a stakeholder from the possibility of multiple claims on a single fund." *Rhoades*, 196 F.3d at 600 n. 8. Faced with the potential for multiple claims against the Policy Proceeds, Primerica was correct in seeking interpleader in this case. Because it has tendered the full Policy Proceeds to the court and asserts no claim to the Policy Proceeds, its motion for summary judgment should be granted and it should be dismissed from this case.

Primerica also asks the court to award it $24,695 as reasonable and necessary attorneys' fees in this matter. *See* Primerica's summary judgment brief at 25; *see also* App. at Tab B, 076-114. A district court has the authority and discretion to award attorneys' fees in successful interpleader suits to a disinterested stakeholder whenever it is fair and equitable to do so. *Rhoades*, 196 F.3d at 603. Although none of the named potential beneficiaries to the Policy Proceeds has filed a formal response to Plaintiff's motion for summary judgment, the Magistrate Judge set a hearing on December 16, 2008 at 9:30 a.m. to consider Primerica's request for attorneys' fees and to permit the potential beneficiaries to contest an award of such fees or to question the reasonableness and/or the necessity of the fees requested. Notice of the hearing was mailed to each potential beneficiary on November 21, 2008 but no one appeared at the appointed time except attorney Bill E. Davidoff on behalf of Plaintiff. While interpleader actions are

---

> fact, disqualified, Primerica filed the instant interpleader action against all possible ultimate beneficiaries to prevent liability to more than one party for the Proceeds. Based on these alleged facts, the Court finds that Primerica's interpleader action is not frivolous or in bad faith, but is in fact the proper way to resolve who is entitled to the Proceeds.

Judge Solis' May 14, 2007 Order at p. 5.

normally simple matters, the defendants in this case have protracted these proceedings by filing numerous motions for sanctions, "special appearances," responses and objections. *See* Plaintiff's Appendix, *supra*, Declaration of Bill E. Davidoff at ¶¶ 5-6, 078-079 and Billing Records at 082-11. As a result, Primerica's attorneys have had to expend additional attorney hours and resources in responding to these motions above and beyond those required in a typical interpleader action.

In determining what award to an interpleader's attorneys is reasonable, the commentators have identified five factors "(1) Whether the case is simple or involved; (2) Whether the stakeholder performed any unique services for the claimants or the court; (3) Whether the stakeholder acted in good faith and with diligence; (4) Whether the services rendered benefitted the stakeholder; and (5) Whether the claimants improperly protracted the proceedings." *Noeller v. Metropolitan Life Ins. Co.*, 190 F.R.D. 202, 206 (E.D. Tex. 1999).

As noted above, what ordinarily would have been a relatively simple matter in the course of interpleading the Policy Proceeds was rendered much more difficult by the filings on behalf of Clarence and the other possible beneficiaries. Primerica's counsel provided no unique services which benefitted either the possible beneficiaries of the Policy Proceeds or the court. On the other hand, Plaintiff's attorneys performed in good faith and diligence when it became apparent that as a matter of law Clarence might be prohibited from receiving the money owed under the Policy. As noted above, Primerica was repeatedly advised by Oklahoma law enforcement authorities that Clarence remained a suspect in the murder of his brother, the policy holder. After his status as a suspect was reiterated in February 2007, the present action was filed on February 8, 2007.

The law firm's efforts in responding to claimants' pleadings and in preparing and filing a motion for summary judgment on Primerica's behalf when Clarence and the other possible claimants refused to agree to a dismissal of the insurer as a party after the Policy Proceeds were deposited in the registry of the court definitely benefitted Plaintiff. Finally, the actions of Clarence, Rosa Baccus and Myra Baccus, specifically and particularly, reflect improper efforts to protract the first stage of this action. *See, e.g., Rhoades*, 196 F.3d at 600.

The factors clearly weigh in favor of granting Plaintiff's request for attorneys' fees.

The billing records submitted are sufficiently detailed to allow the court to ascertain the services provided and the hours devoted to such services. The hourly rates of the attorneys identified in the billing records are reasonable given their experience and customary billing rates, particularly where no competent evidence has been offered calling either the rates or time expended into question. Finally, the court observes that Primerica has been granted a professional discount due to its long standing relationship with the Figari & Davenport law firm and that the invoices submitted in Plaintiff's Appendix have been paid in full by Primerica.[4]

---

[4] For the reasons stated on the record at the hearing held on December 16, 2008, the Magistrate Judge has declined to recommend an award of additional attorneys' fees incurred after the motion for summary judgment was filed, being of the opinion that it is fair and equitable to do so.

**RECOMMENDATION:**

Based on the foregoing, it is recommended that Plaintiff's motion for summary judgment be granted and Plaintiff be awarded attorney's fees and expenses in the amount of $24,695.00 from the Policy Proceeds previously deposited in the registry of the court.

Signed this 17th day of December, 2008.

*WM. F. Sanderson, Jr.*
WM. F. SANDERSON, JR.
UNITED STATES MAGISTRATE JUDGE

NOTICE

In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten (10) days after being served with a copy of this recommendation. Pursuant to *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996)(*en banc*), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten (10) day period may bar a *de novo* determination by the district judge of any finding of fact and conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.